JOHN VAUTRAIN, Respondent, *v.* ST. LOUIS, IRON MOUNTAIN, AND SOUTHERN RAILWAY COMPANY, Appellant.

### April 13, 1880.

1. Where, immediately preceding the injury complained of, section-hands employed by a railroad company dig away the earth around a switch-rod so as to leave a cavity, in consequence of which a brakeman, in the discharge of his duty in uncoupling cars, is injured, these section-hands will not be considered fellow-servants of the brakeman in such a sense as will relieve the company from liability for the injury, but their act will be taken to be the act of the company.

2. If, after the injury, the plaintiff receives money from the defendant, its return is not a condition precedent to a recovery, unless it be shown that it was paid under an agreement of settlement of the damages.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

THOROUGHMAN & PIKE, for the appellant: The plaintiff, having accepted money in settlement of his claim, must refund the same and rescind the agreement before he is entitled to sue. — *Jarrett* v. *Morton*, 44 Mo. 277. The instruction is fatally defective, as one essential element in its definition of negligence is omitted — that of notice, either actual or constructive. — *Lewis* v. *Railroad Co*, 59 Mo. 501; *McGowan* v. *Railroad Co.*, 61 Mo. 532; *Devany* v. *Iron Works*, 4 Mo. App. 243; *Holmes* v. *Clark*, 6 Hurl. & N. 349.

A. R. TAYLOR, for the respondent: The plaintiff was under no obligation to return money paid him, as he supposed, as wages.— 2 Thomp. on Neg. 1026; *Railroad Co.* v. *Welch*, 52 Ill. 187; *Butler* v. *Regents*, 32 Wis. 125. "One who signs a release or acquittance *without knowing its contents* is not bound by it."— *Schultz* v. *Railroad Co.*, 44 Wis. 638; *Railroad Co.* v. *Doyle*, 18 Kan. 59. That the plaintiff was injured through the negligence of persons intrusted by the defendant to keep its tracks in repair renders the defendant liable. — *Lewis* v. *Railroad Co.*, 59 Mo. 495. There was no question of notice in this case. — *Porter* v. *Railroad Co.*, 60 Mo. 160.

HAYDEN, J., delivered the opinion of the court.

This is an action to recover damages for injuries received by the plaintiff while engaged, as a brakeman, in uncoupling cars in the defendant's yard in St. Louis. The cars were moving slowly, and the plaintiff, as usual in uncoupling, had stepped on the track between two of them to withdraw the pin. The plaintiff's case is, that at the point in the track where, to do his duty, he was then obliged to walk, as the

cars moved, the company's road-bed was in bad order; that certain switch-rods, which are the iron rods used to connect the movable rails, crossed the track there, and that the track-clearers of the defendant, shortly before, had made a hole or cavity under one of these switch-rods, in which the plaintiff's foot caught as he moved between the cars; that, as his foot thus caught in the hole, the switch-bar above pressed on his instep and so fastened his foot that he could not release it in time to get out of the way of the moving cars; that in consequence he was knocked down by the car and under it, was dragged along, his right arm so crushed as to render amputation necessary at the shoulder, and his foot crushed. The answer denied the allegations of the petition, and set up that the injuries were caused by the plaintiff's misconduct; and, further, that the plaintiff had received over $200, in full satisfaction of this demand, and had by several releases discharged defendant from any liability. The reply denied any release, and alleged the papers were procured by fraud and deceit. There was judgment for the plaintiff for $6,000.

Into the details of the testimony — except upon one point, in regard to which the defendant claims there is no evidence — it is not necessary to go, as many questions which the defendant now argues resolve themselves into matters touching the weight of evidence and the credibility of witnesses. Thus, whether the foot of the plaintiff caught in the frog, which was a permanent part of the track, and the peculiarity of which the plaintiff, who had been in the employ of the company for several years, well knew, was a question which was directly put to the jury by an instruction of the court, who told the jury that if the injury was caused by the plaintiff's foot being caught in the frog, instead of under the switch, the plaintiff could not recover. The finding upon this and upon other essential issues shows that, in spite of contradictions and confusions, real or apparent, which the testimony of the plaintiff and the witness Bour-

nell displays, the jury believed these witnesses rather than those of the defendant.   So, in regard to the matter of the release and acquittance, it is not complained that the instructions by which the jury were directed were erroneous, except as to the point which is noticed below.   The jury have found that the plaintiff was deceived as to the character of these papers, that he did not know they were releases of this cause of action, and that the papers were procured by false representations.   Into such questions as these it is impossible to go, unless the rule is to be discarded that, where there is a decided conflict of evidence, the question is for the jury and the trial court.

It is complained there was error in giving the following instructions : —

"And if the jury believe, from the evidence in the cause, that plaintiff was caused to be thrown down and the wheel of defendant's car was caused to pass over plaintiff's arm and foot, and cause said injuries to plaintiff's arm and foot, by reason of a hole dug in defendant's track, under a switch-rod, by defendant's servants whilst repairing defendant's track, and by said servants left open and uncovered — if the jury so believe ; and if the jury believe, from the evidence, that said hole in defendant's track, in the condition in which it was left by defendant's said servants whilst repairing said track, rendered said track dangerous to plaintiff whilst in the discharge of his duties as such brakeman, made said track and defective ; and if the jury believe, from the evidence, that plaintiff did not know of the existence of said hole in said track, and that, whilst exercising reasonable care as such brakeman, could not have discovered said hole before he sustained said injuries ; and if the jury believe, from the evidence, that said servants of defendant engaged in repairing defendant's track did not use reasonable care in leaving said hole in said track, and that such act was negligence on the part of said servants ; and if the jury believe, from the evidence, that the work of keeping defendant's track in

repair at the place where said hole was, was a different and distinct department of defendant's business from that in which plaintiff was employed as such brakeman ''— then the jury will, the instructions go on to say, find for the plaintiff.

The only questions now made are in regard to those portions of the instructions which we have put in quotation-marks, which portions cover the question of negligence on the part of the defendant.

The criticism made is, that the above assumes that a mere workman or day-laborer of the defendant is its agent or representative, to whom its authority has been delegated ; that the instructions do not require that the company should know of the alleged defective condition of its track, or that the jury should find that, by reasonable care and diligence, the company might have thus known. This objection may best be considered in connection with the objection that there was no evidence tending to show that the hole was made by the section-men of the defendant, and therefore none to support the instruction on that point.

The defendant's evidence we are not concerned with. There was testimony on the part of the plaintiff tending.to show that employees of the defendant whose duty it was to keep the track in order were clearing the track in the morning of the day of this accident, which happened about two o'clock in the afternoon ; that these men were digging the earth, the weather being very cold, to keep the track, crossings, and switches free and in proper order. A police officer testified that, half an hour after the accident happened, he examined the switch-rods, and that they were dug out about half a foot ; that the work had been done on the same day ; that he had seen the men repairing the track there on that day, but it was from the appearance of the ground that he inferred that the earth under the switch-rods had been dug out on that day. This is testimony from which the jury may fairly have inferred that the earth under the rods had

been cleared away by the trackmen of the defendant to such an extent as not only to leave room for the free operation of the switches, but to leave cavities which would necessarily be dangerous to brakemen, who, while the cars were in motion, were obliged, in the discharge of their duty, to go between them and to keep on the track while engaged in uncoupling the cars.   The question is here not so much one of the defective condition of the track as it is of improper or negligent acts of employees of the defendant, within their own sphere, which directly contributed to cause the injury, which acts were, in legal contemplation, the acts, not of fellow-servants of the plaintiff, but of the defendant itself. The defendant, through the section-hands, so dug away the earth — that is, to such an unnecessary depth — as to make the cavity, and thus, not by permissive negligence, but by want of care and skill in executing a duty, occasioned the injury.   Thus, in view of this evidence, the instructions were proper ; and there was here no question as to the knowledge of the company or its want of diligence in failing to repair a defect of indefinite origin or existence.   The act itself almost immediately preceded the injury. .

It is not easy to understand on what legal ground the defendant rests its position that, upon the basis that the receipts of the plaintiff were procured by fraud, the plaintiff was yet bound to return the money as a condition precedent to bringing this suit.   The two things have no connection. If one pays money for goods, he cannot keep the goods and recover the money, thus affirming the contract which he seeks to rescind.   But the plaintiff seeks to rescind no contract, nor do the rights which he now asserts grow out of any, the consideration of which is in any way in question. The plaintiff sues for his injury.   It is the defendant who asserts an acquittance, while the jury have found there was none : that the plaintiff signed the papers believing them mere receipts for money.   In *Jarrett* v. *Morton*, 44 Mo. 276, the parties agreed on the settlement, and the plaintiff, while

keeping what he had received under it, sued on the basis that the settlement was void and his original claim outstanding. If the jury had found, in the case at bar, that there had been any settlement as to the plaintiff's claim, there might be some parallelism between the two cases. But it is obvious that the defendant might have paid money to a person in the plaintiff's condition, and the plaintiff have received it, without there being on the plaintiff's part any acceptance of money as on a release. That one should give and the other receive money implies nothing strange. At all events, no contract existed on the facts as found; and, if none was made, there is no question of acceptance or rescission.

No error is shown in the action of the court below, and the judgment of the court must be affirmed. Judge BAKE-WELL concurs; Judge LEWIS is absent.